Appeal No. 2022-1286

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

TERADATA CORPORATION, TERADATA OPERATIONS, INC., and
TERADATA US, INC. ,

*Plaintiffs-Appellants,*

v.

SAP SE, SAP AMERICA, INC., and SAP LABS, LLC,

*Defendants-Appellees.*

Appeal from United States District Court for the
Northern District of California
Case No. 3:18-cv-03670-WHO
Hon. William H. Orrick

## MOTION TO TRANSFER

Joshua L. Fuchs
Joseph M. Beauchamp
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002.2712
(832) 239-3939

Gregory A. Castanias
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC  20001
(202) 879-3939

Tharan Gregory Lanier
Nathaniel P. Garrett
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
(650) 739-3939

*Attorneys for Defendants-Appellees
SAP SE, SAP AMERICA, INC. and SAP
LABS, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ................................................................1

BACKGROUND ...........................................................................................5

    A.  Teradata's Trade-Secret and Antitrust Claims ...................................5

    B.  SAP's Patent Counterclaims.................................................................7

LEGAL STANDARD .....................................................................................10

ARGUMENT ................................................................................................10

CONCLUSION .............................................................................................16

FEDERAL CIRCUIT RULE 27(a)(2) STATEMENT OF OPPOSITION ........17

# TABLE OF AUTHORITIES

**Page**

## Cases

*ABS Glob., Inc. v. Inguran, LLC*,
914 F.3d 1054 (7th Cir. 2019) ...........................................................14

*Dambach v. Gober*,
223 F.3d 1376 (Fed. Cir. 2000)..........................................................10

*FieldTurf Inc. v. TurfUSA, LLC*,
2004 WL 67916 (W.D. Ky. Jan. 13, 2004) ........................................13

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
857 F.3d 1347 (Fed. Cir. 2017)..........................................................12

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
535 U.S. 826 (2002) ...........................................................................11

*In re Rearden LLC*,
841 F.3d 1327 (Fed. Cir. 2016)..........................................................12

*Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.*,
476 F.3d 1329 (Fed. Cir. 2007)..........................................................12

*Leap Wireless Int'l, Inc. v. MetroPCS Commc'ns, Inc.*,
2007 WL 541428 (E.D. Tex. Feb. 15, 2007) ......................................13

*Morrison-Knudsen Co. v. Archer*,
655 F.2d 962 (9th Cir. 1981) ..............................................................15

*Phoenix Petroleum Co. v. FERC*,
95 F.3d 1555 (Fed. Cir. 1996)............................................................10

*Vermont v. MPHJ Tech. Invs., LLC*,
803 F.3d 635 (Fed. Cir. 2015)..................................................... 11, 12

*Wood v. GCC Bend, LLC*,
422 F.3d 873 (9th Cir. 2005) ..............................................................15

# TABLE OF CONTENTS
### (continued)

**Page**

*Xitronix Corp. v. KLA-Tencor Corp.,*
   882 F.3d 1075 (Fed. Cir. 2018)..............................................................11

## Statutes

18 U.S.C. § 1836.......................................................................................1

28 U.S.C. § 1295............................................................................ 1, 10, 11

28 U.S.C. § 1331.......................................................................................1

28 U.S.C. § 1337.......................................................................................1

28 U.S.C. § 1338.......................................................................................1

28 U.S.C. § 1367.......................................................................................1

28 U.S.C. § 1631.....................................................................................10

## Rules

Fed. Cir. R. 27................................................................................ 4, 10, 12

Fed. R. Civ. P. 13........................................................................... 2, 11, 12

Fed. R. Civ. P. 54....................................................................... 1, 4, 9, 14

## INTRODUCTION AND SUMMARY

Plaintiffs-Appellants ("Teradata") have appealed to this Court a partial final judgment, issued by the United States District Court for the Northern District of California pursuant to Federal Rule of Civil Procedure 54(b), on their claims for trade-secret misappropriation under California and federal law, and for violations of federal antitrust law. Defendants-Appellees ("SAP") bring this motion to transfer because the parties have an obligation to promptly identify jurisdictional defects, and this appeal properly belongs in the U.S. Court of Appeals for the Ninth Circuit.

Teradata's complaint in this case pleaded claims of trade-secret misappropriation, copyright infringement, and federal antitrust violations, among others. It invoked federal jurisdiction "under 18 U.S.C. § 1836(c) and 28 U.S.C. §§ 1331, 1337(a), 1338(a), and 1367." Teradata's Second Amended Complaint, Dkt. 67 at ¶ 10.[1] Teradata did not plead any claims arising under the patent laws. Accordingly, this Court would have jurisdiction over this appeal only if the patent-infringement counterclaims

---

[1] All "Dkt." citations refer to the district court pleadings.

asserted in the district court by SAP were compulsory within the meaning of Federal Rule of Civil Procedure 13(a).  *See* 28 U.S.C. § 1295(a)(1).

Federal Rule of Civil Procedure 13(a)(1) requires the pleading of a counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  While the status of SAP's counterclaims as "compulsory" or "permissive" was never litigated before the district court, the relationship between those patent counterclaims and Teradata's non-patent claims was joined in the context of Teradata's efforts to sever SAP's counterclaims from this suit.  In seeking severance, Teradata argued, vehemently and repeatedly, that there is no legal or factual overlap between its trade-secret claim and SAP's patent counterclaims.  *See, e.g.*, Teradata's Motion to Sever, Dkt. 395 at 1 ("First, the cases arise from different transactions and occurrences.  *Teradata I* [this civil action] arises from SAP's misuse of Teradata's trade secrets to develop a product that competes with Teradata—HANA—and anti-competitively tie that product to its enterprise resource planning ('ERP') applications.").[2]

---

[2] Both parties agree that SAP's counterclaims do not arise from the same transaction or occurrence as Teradata's antitrust claim.  *See* Dkt. 395 at 12-13; Dkt. 174 at 19-20.

SAP opposed Teradata's *seriatim* requests to sever SAP's patent counterclaims, including on the ground that the patent counterclaims "ar[o]se out of the same transaction or occurrence" as Teradata's trade-secret claims.  Dkt. 397-4 at 6.  SAP argued that it had long innovated in the technical and product areas relevant to Teradata's trade-secret claims and that SAP's patent counterclaims, based on patents pre-dating Teradata's alleged trade secrets, demonstrated that SAP neither needed to, nor did, misappropriate those alleged trade secrets (as well as that SAP was entitled to relief from Teradata for patent infringement).  It would be unfair, SAP argued, to allow Teradata to present its misappropriation claims to the jury without the same jury hearing about SAP's history of innovation and specific patents that evidenced that SAP did not misappropriate Teradata's alleged trade secrets, nor would need to do so.

At Teradata's urging, the district court considered (on several occasions) the question of whether to sever SAP's patent counterclaims and suggested, without a final determination, and in the context of this discretionary question of severance, that at least one of SAP's patent counterclaims likely arose from the same transaction or occurrence as Teradata's trade-secret claims.  Dkt. 418.  But the district court was never

asked to decide (and thus did not decide) whether SAP's patent counterclaims were compulsory, and, because the parties reached a partial settlement of this case before the pretrial conference, never finally determined the question of what claims would be tried to the jury in which case.  Nor did the district court find that the legal and factual issues raised by SAP's counterclaims are largely the same as those raised by Teradata's claims, or that substantially the same evidence supports both sets of claims – two of the tests used to determine whether a counterclaim is compulsory.

Certainly, the parties can agree that no patent issues will be presented in this appeal.  SAP's claims for infringement of two patents are stayed pending the outcome of Teradata's appeal on its trade-secret claims, and SAP cannot cross-appeal the district court's determination that one of SAP's asserted patents was invalid, for that separate determination was not within the scope of the district court's entry of partial final judgment under Rule 54(b).

In these circumstances, the better view is that this case is *not* one "in which a party has asserted a compulsory counterclaim arising under" the patent laws, and thus one falling within this Court's exclusive, but congressionally limited jurisdiction.  As required under Federal Circuit

Rule 27(f), SAP therefore raises this issue of jurisdiction for the Court's

determination.

## BACKGROUND
### A. Teradata's Trade-Secret and Antitrust Claims.

Teradata filed this action on June 19, 2018, asserting claims for trade-

secret misappropriation under the California Uniform Trade Secret Act

("CUTSA") and the Defend Trade Secrets Act ("DTSA"), and for violations

of the federal antitrust laws.  Dkt. 1 ¶¶ 100-117, 128-152. After voluntarily

dismissing certain claims and theories of liability, Teradata approached

summary judgment with claims under the antitrust laws and for trade-

secret misappropriation.

The district court granted summary judgment to SAP on Teradata's

so-called "technical" trade-secret claim for two independently-fatal

reasons.  To begin, the parties' dealings were governed by contracts that

dictated the terms for sharing confidential information.  The governing

contracts defined "Confidential Information" to mean information reduced

to writing and marked confidential.  Dkt. 603 at 11.  The evidence was

undisputed that "Teradata failed to comply with its contractual obligation

to designate information as confidential when it disclosed the alleged

Batched Merge Method trade secret to SAP." *Id.* at 13.

The contracts governing the parties' relationship also expressly gave

SAP ownership of, or at least the right to use, the alleged trade secrets at

issue in any product – including outside the context of their previous work

together.  Dkt. 603 at 14-18.  Under the plain terms of the parties' contracts,

SAP owns for all purposes the software that contains the alleged trade

secrets, or is at least entitled to use Teradata's suggestions about how to

modify *SAP* products for any purpose and without restriction – even if

those suggestions were reduced to writing and marked confidential.  *Id.*

In the face of SAP's motion for summary judgment, Teradata

voluntarily dismissed its attempted monopolization claim but opposed

summary judgment on its cause of action for unlawful tying.  Dkt. 603 at 7.

As the district court recognized, Teradata changed its theory of liability at

summary judgment because the evidence contradicted the theory pled in

the complaint.  *Id.* at 44.  Even this newfound theory failed, however,

because Teradata relied on an unreliable expert opinion.  *Id.* at 21-38.  The

district court found, among other things, that the expert opinion

underlying the proposed tying and tied markets was fatally unreliable (*id.*),

and concluded that summary judgment was warranted both because Teradata failed to properly define a tied or tying market and because Teradata failed to proffer any evidence that SAP has caused actual injury to competition in the tied market Teradata did define (*id.* at 48-49 & n.16).

## B. SAP's Patent Counterclaims.

On May 29, 2019, SAP moved for leave to file five patent counterclaims.  Dkt. 104.  SAP explained that the five patents showed that "SAP is the true inventor of many of the technical features that Teradata tries to grab in its lengthy, broad trade secret list."  *Id.* at 5.  Teradata opposed, arguing that even if leave to amend was granted, the counterclaims should be severed because there was "little—if any—overlap between the legal and factual issues" presented by SAP's counterclaims and Teradata's own claims.  Dkt. 109 at 15.  The district court granted SAP's motion in light of the liberal amendment standard of Federal Rule of Civil Procedure 15, but also indicated that it was inclined to sever the patent counterclaims subject to a more fulsome development of the record. July 10 Hearing Tr., Dkt. 122 at 3-6.

Two months later, in a joint case-management statement, Teradata again urged the district court to sever SAP's counterclaims.  Dkt. 174.

Teradata argued that SAP's counterclaims and infringement contentions "demonstrate[d] a lack of factual overlap between SAP's patent claims and Teradata's original claims," as each involved different "witnesses, evidence, [and] products at issue." *Id.* at 9. The district court declined to sever at that time, finding it was "unclear … exactly how the trade secrets or the patent claims map on each other," and reasoning that an immediate decision was unnecessary. Dkt. 209 at 4.

Eventually, after SAP dismissed one of its patents (Dkt. 391), Teradata formally moved to sever the remaining four counterclaims, arguing "there is little to no overlap between SAP's asserted patents … and Teradata's trade secrets." Dkt. 395 at 4:16-17. Teradata explained that its trade-secret claims arose from interactions during a joint project—denominated the "Bridge Project"—whereas SAP's patent counterclaims had nothing to do with the Bridge Project and did not overlap in time. *Id.* at 9-10.

SAP opposed severance, arguing that because Teradata alleged that HANA was "built upon Teradata trade secrets," SAP was entitled to show that HANA actually was derived from "inventions that SAP published years before the Bridge Project." Dkt. 397-3 at 9-10.

The district court granted severance as to one patent, but denied it as to three others: the '421, '321, and '179 patents. Dkt. 418 at 1. In denying severance, the court noted that it "appears from the argument presented at this juncture that SAP's counterclaims arise out of the same transaction or occurrence" as Teradata's trade-secret claims — namely, "the development of SAP's product HANA." Dkt. 418 at 1.

Teradata then moved for summary judgment on the '321 patent as directed to patent-ineligible subject matter. Dkt. 472. The district court granted that motion, leaving only the '421 and '179 patents for trial. Dkt. 603 at 49-64.

On November 22, 2021, pursuant to a partial settlement reached between the parties under the supervision of a magistrate judge, the district court entered final judgment on Teradata's trade-secret and tying claims pursuant to Federal Rule of Civil Procedure 54(b). Dkt. 608 at 9. The court stayed SAP's patent counterclaims pending this appeal. *Id.* [3]

---

[3] The parties' partial settlement agreement provided, in part, that neither party would challenge "appellate jurisdiction" of Teradata's appeal from the district court's partial judgment. By this motion, SAP does not challenge appellate jurisdiction over Teradata's appeal. Rather, SAP is

On December 17, 2021, Teradata noticed its appeal and invoked the jurisdiction of this Court.  Dkt. 610.

## LEGAL STANDARD

Federal Circuit Rule 27(f) provides that "[a] motion to dismiss for lack of jurisdiction, to transfer, or to remand should be made as soon as the grounds for the motion are known."  This Court has appellate jurisdiction "in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents."  28 U.S.C. § 1295(a)(1).  If this Court lacks jurisdiction over an appeal, it shall, "if it is in the interest of justice, transfer such action or appeal to any other such court … in which the action or appeal could have been brought at the time it was filed or noticed."  28 U.S.C. § 1631.

## ARGUMENT

This Court "is a court of limited jurisdiction set out by Congress." *Dambach v. Gober*, 223 F.3d 1376, 1379 (Fed. Cir. 2000).  As a court of limited jurisdiction, it "cannot act without assuring [itself] of the statutory

---

seeking to *preserve* appellate jurisdiction by ensuring that Teradata's appeal is adjudicated by the correct court.

predicate for such action." *Phoenix Petroleum Co. v. FERC*, 95 F.3d 1555, 1559 n.3 (Fed. Cir. 1996) (quotation marks and citation omitted).

The "boundaries" of this Court's "judicial influence" are established by 28 U.S.C. § 1295. *Xitronix Corp. v. KLA-Tencor Corp.*, 882 F.3d 1075, 1080 (Fed. Cir. 2018). Section 1295(a)(1) confers this Court with jurisdiction over appeals from "any civil action arising under" patent law. Under this portion of Section 1295(a)(1), jurisdiction exists only if "a patent-law claim appears on the face of the plaintiff's well-pleaded complaint." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 834 (2002). Teradata's Second Amended Complaint—the operative complaint—asserts no claim under the patent laws. Dkt. 67.

In 2011, Congress enacted the America Invents Act, and slightly expanded this Court's appellate jurisdiction under Section 1295(a)(1) to legislatively overrule *Holmes Group* and provide this Court with "jurisdiction over claims arising under the patent laws *even* when asserted in counterclaims, rather than in an original complaint." *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 644 (Fed. Cir. 2015). This amendment, however, limited the expansion of this Court's jurisdiction to cases where

the patent counterclaim is "compulsory" under Federal Rule of Civil Procedure 13.  *See id.*

Because the concept of what constitutes a "compulsory counterclaim" directly impacts this Court's jurisdiction, it is governed by Federal Circuit law.  *MPHJ Tech.*, 803 F.3d at 644 n.2.  To determine whether a particular counterclaim is compulsory, this Court looks to Rule 13(a), which provides that a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  *See In re Rearden LLC*, 841 F.3d 1327, 1332 (Fed. Cir. 2016).  This Court has used three tests to determine whether the "transaction or occurrence" test of Rule 13(a) is met: (1) whether the legal and factual issues raised by the claim and counterclaim are largely the same; (2) whether substantially the same evidence supports or refutes both the claim and the counterclaim; and (3) whether there is a logical relationship between the claim and counterclaim.  *Id.*

This Court, of course, has an obligation to assure itself of jurisdiction before considering the merits of Teradata's appeal.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 857 F.3d 1347, 1351 (Fed. Cir. 2017).  So, too, do parties have an obligation to raise issues of this Court's jurisdiction as soon as practical

where there is a substantial question on the topic.  Fed. Cir. Rule 27(f); *cf. Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.*, 476 F.3d 1329, 1331 (Fed. Cir. 2007).

A substantial question exists here.  SAP's patent counterclaims are not, themselves, at issue in this appeal.  Although the district court granted summary judgment to Teradata on SAP's '321 patent, SAP has not appealed (or cross-appealed) that ruling.  Indeed, SAP could not have appealed even if it wanted to.  As explained above, the district court entered partial final judgment only on *Teradata*'s claims.  *See* Dkt. 608 at 9. The district court's resolution of SAP's patent counterclaim thus is not final, and those counterclaims are stayed in the district court pending this appeal.  *See id.*

More to the point, however, SAP's patent counterclaims are not "compulsory."  To be sure, a patent counterclaim is compulsory when the plaintiff's trade-secret claim involves the scope and validity of the patent-in-suit, or at least involves "many of the same parties, the same underlying design concept, and much of the same evidence and course of conduct." *Leap Wireless Int'l, Inc. v. MetroPCS Commc'ns, Inc.*, 2007 WL 541428, at *4 (E.D. Tex. Feb. 15, 2007).  Just so, however, such counterclaims are not

compulsory where "the legal theories are distinctly different," or "there appears to be minimal factual overlap." *FieldTurf Inc. v. TurfUSA, LLC*, 2004 WL 67916, at *2 (W.D. Ky. Jan. 13, 2004). After all, when faced with a trade-secret or antitrust claim bearing only a minor relation to a patent owner's portfolio, that patent owner should not be obligated to "immediately counterclaim with any and every . . . claim of infringement against that plaintiff or else lose such claims forever." *ABS Glob., Inc. v. Inguran, LLC*, 914 F.3d 1054, 1064 (7th Cir. 2019) (quotation marks and citation omitted).

In the district court, Teradata expressly and repeatedly argued that "no substantive overlap exists" between SAP's patents and its "batched merge method" trade-secret claim. Dkt. 395 at 11:13. According to Teradata, SAP's inventions have "nothing to do with Teradata's … trade secrets remaining in this case." *Id.* at 12:7-8; *see also* Dkt. 405-4 at 2-9 (arguing that Teradata's trade-secret claim and SAP's patent counterclaims neither arise from the same transaction nor overlap legally or factually).

It is true that, in opposing severance of its counterclaims, SAP argued there was some overlap between the asserted trade secrets and at least

some of its asserted patents – an argument the district court never finally

resolved given the partial settlement.  *See* Dkt. 175-4 at 5-7.

That said, the district court's entry of a Rule 54(b) certificate on

Teradata's claims – a determination that SAP does not challenge – itself

strongly suggests that SAP's unappealed (and unadjudicated)

counterclaims do not bear the relationship to Teradata's claims that would

be required for those counterclaims to be "compulsory" counterclaims.

Under Ninth Circuit precedent, which governs here, Rule 54(b) treatment is

not appropriate where the appealed and unappealed claims are not "truly

separable" – "the greater the overlap" there is between appealed and

nonappealed claims, "the greater the chance that this court will have to

revisit the same facts — spun only slightly differently — in a successive

appeal."  *Wood v. GCC Bend, LLC*, 422 F.3d 873, 880, 882 (9th Cir. 2005).  "A

similarity of legal or factual issues will weigh heavily against entry of

judgment under [Rule 54(b)]. . . ."  *Morrison-Knudsen Co. v. Archer*, 655 F.2d

962, 965 (9th Cir. 1981).

What is more, beyond Teradata repeatedly arguing that SAP's

counterclaims did not arise from the same transaction or occurrence as

Teradata's claims, it is "beyond dispute" that Teradata's trade-secret claim

and SAP's patent counterclaims "involve different legal questions."  Dkt. 174 at 11:6-7.  The legal questions presented by Teradata's trade-secret claims, including whether Teradata preserved the confidentiality of the alleged trade secrets and whether Teradata contracted to SAP the right to use them in SAP products, are wholly divorced from the question of whether SAP can prove that Teradata infringed a valid patent.

Likewise, the summary-judgment record demonstrates that the factual underpinnings of both claims are distinct.  For example, the witnesses most pertinent to Teradata's trade-secret claim are those engineers (from both sides) who worked on the parties' dealings – for SAP, those engineers include Torsten Pfeiffer, Alexander Schroeder, and Rainer Hoeltke.  *See* Dkt. 528-5 ¶¶ 10-39.  None of those engineers, however, is an inventor of any of the three remaining patents that were asserted in this case prior to the summary-judgment ruling.  *See* Dkt. 104-4 at 2; 104-5.

## CONCLUSION

For these reasons, Teradata's appeal should be transferred to the United States Court of Appeals for the Ninth Circuit.

**Federal Circuit Rule 27(a)(2) Statement of Opposition**

Counsel for SAP has conferred with counsel for Teradata about this Motion, and Teradata has stated that it opposes this Motion and will respond.

Dated:     January 14, 2022     Respectfully submitted,

*s/ Tharan Gregory Lanier*

Tharan Gregory Lanier
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
(650) 739-3939

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.    This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the items exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b), the motion contains 3,131 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in a 14-point Book Antiqua font.

Dated:    January 14, 2022            Respectfully submitted,


*s/ Tharan Gregory Lanier*
Tharan Gregory Lanier
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
(650) 739-3939

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2022, a copy of the foregoing motion was filed electronically with the Clerk of Court using the ECF system, which will send notifications to all ECF participants.

*/s/ Tharan Gregory Lanier*
Tharan Gregory Lanier

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---:|---|
| **Case Number** | 2022-1286 |
| **Short Case Caption** | Teradata Corporation v. SAP SE |
| **Filing Party/Entity** | SAP SE, SAP America, Inc. and SAP Labs, LLC |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/04/2022

Signature:   /s/ Tharan Gregory Lanier

Name:   Tharan Gregory Lanier

FORM 9. Certificate of Interest

Form 9 (p. 2)
July 2020

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| SAP SE | | Not Applicable |
| SAP America, Inc. | | SAP SE |
| SAP Labs, LLC | | SAP SE |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable    ☑ Additional pages attached

| | | |
|---|---|---|
| Joshua L. Fuchs<br>Jones Day | Justin White<br>Jones Day | Roy Chamcharas<br>Klarquist Sparkman, LLP |
| H. Albert Liou<br>Jones Day | Catherine T. Zeng<br>Jones Day | Gregory A. Castanias<br>Jones Day |
| Geoffrey D. Oliver<br>Jones Day | J. Christopher Carraway<br>Klarquist Sparkman, LLP | Klaus H. Hamm<br>Klarquist Sparkman, LLP |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## 4. Legal Representatives

Kristin L. Cleveland
Klarquist Sparkman, LLP

Kyle B. Rinehart
Klarquist Sparkman, LLP

John D. Vandenberg
Klarquist Sparkman, LLP

Mark W. Wilson
Klarquist Sparkman, LLP

Garth A. Winn
Klarquist Sparkman, LLP

David J. Ball, Jr.
Paul, Weiss, Rifkind, Wharton & Garrison LLP

J. Steven Baughman
Paul, Weiss, Rifkind, Wharton & Garrison LLP

Kenneth A. Gallo
Paul, Weiss, Rifkind, Wharton & Garrison LLP

Stefan Geirhofer
Paul, Weiss, Rifkind, Wharton & Garrison LLP

Crystal M. Johnson
Paul, Weiss, Rifkind, Wharton & Garrison LLP

William Michael
Paul, Weiss, Rifkind, Wharton & Garrison LLP

Megan F. Raymond
Paul, Weiss, Rifkind, Wharton & Garrison LLP